## WILLIAM LEWIS *v.* RICHARD S. MORGAN.

In a redhibitory action for disease in a slave, it is necessary that there be an allegation and proof of a tender in order to recover ; and that such tender should be made if practicable, before the institution of the suit.

There are two exceptions to this rule. First, when an actual tender is not possible ; and second, where defendant has done some act, or made some declaration which demonstrates that a formal offer to return the thing sold would have been fruitless.

It is not a sufficient excuse for want of tender, that it was impracticable at the time of instituting the suit, if it was practicable at any time between the discovery of the vice and the institution of the suit, or even before the trial.

APPEAL from the District Court of the Parish of St. Helena, *Wilson,* J. *Penn & Martin,* for plaintiff. *E. P. & T. C. W. Ellis,* for defendant and appellant.

BUCHANAN, J. This is a redhibitory action for a disease in a slave, sold by defendant to plaintiff. The appellant asks for the reversal of a judgment, on the ground, among others, that no tender of the slave is either alleged or proved.

It is the well settled doctrine, that allegation and proof of a tender are indispensible to recovery in an action of this kind ; and that the tender should be made, if practicable, before the institution of the suit. 2 N. S. 466 ; 4 La. 193 ; 19 La. 283 ; 9 Rob. 306 ; 1 An. 389 ; 2 An. 955 ; 4 An. 562 ; 10 An. 127 ; 11 An. 209.

Two exceptions to this general rule, are recognized by the decisions :

*First*—When an actual tender is not possible ; and

*Second*—Where defendant has done some act, or made some declaration, which demonstrates that a formal offer to return the thing sold, would have been fruitless. 1 An. 44 ; 4 An. 344.

It is contended by appellee, that this case comes within the first of these exceptions—that defendant was an absentee from the State when this suit was instituted.

The evidence shows that the sale took place on the 25th of March, 1858, defendant being then a resident of Amite city, and plaintiff residing within six miles of Amite city, which was his post-office ; that the disease of the slave was discovered by plaintiff within three or four days after the sale ; that a physician was immediately called in, who pronounced the disease to be of several months standing ; that defendant continued to reside in Amite until the latter end of May, or beginning of June, being two months or more after the sale ; that on his departure, defendant left an agent in the parish, who, it is reasonable to believe, was known to plaintiff, since the fact was notorious in Amite city, and that agent was made garnishee in this action.

It is, therefore, perfectly evident that there was no impossibility or even inconvenience, in making the amicable demand to rescind the sale, accompanied with an offer to return the slave. This suit was brought in September, 1858, and no tender appears to have been made, either before or since suit brought. We note this latter fact, although Judge Martin held, in *Barrett* v. *Bullard,* 19 La. 283, that the offer to return must always *precede* the institution of a suit. The same doctrine was held in *Fisk* v. *Proctor,* 4 An. 562.

We are of opinion that this suit must fail, for want of allegation and proof of a tender of the slave.

51

LEWIS
*v.*
MORGAN.

The vendee has one year to institute the action of redhibition, and, as a conse-quence, may at any time previous to the institution, make a tender to the vendor. But if he brings his action at once, and does not wait until the twelfth month is about expiring, he cannot, on the trial of the case, give as a reason for not alleging and proving a tender, that he has the whole year for that purpose. The tender, if it can be made, must precede, if not the institution of the suit, at all events the trial.

The question upon which this case turns is this : Was it practicable for the plaintiff at any time, since the discovery of the redhibitory vice, and before the trial, to make a tender ? The test is not the practicability of the offer of ten-der at the time of instituting the suit, but at any time since the discovery of the redhibitory vice or defect. It may be very easy for a vendee to do so during nearly the whole period of time previous to the institution of his action, and the matter become impracticable at the time, but it could hardly be said that in such a case, the exception of impracticability would prevail. The law dispenses with a tender, in such contingencies, because it requires nothing to be done in vain ; and, applying this principle to the case at bar, it will appear, that since the dis-covery made by the plaintiff of the redhibitory defect of the slave purchased by him of the defendant, over two months elapsed, during which it was practicable and easy to make a tender. Having failed to do so, his suit should be dismissed.

This conclusion is not at variance with our decision in the case of *Dixon* v. *Chadwick*, reported in 11 An. 215. That case was decided upon its peculiar cir-cumstances, which brought it within one, if not both, of the exceptions to the general rule, mentioned above. Judge Lea, the organ of the majority of the court says : " *Under the circumstances, as disclosed by the evidence*, we think a ten-der of the slaves by plaintiffs, was *unnecessary*, if not *impracticable*."

The circumstances, alluded to by the Judge, are not detailed in the opinion, but appear from the record, which is before us, to be as follows :

Plaintiff bought of defendant, two women slaves, and paid for them, without any writing passed at the time. It was, however, understood and agreed, that an act of sale should be made, expressing a full warranty of the soundness of the slaves, except an obstruction of the monthly discharge in one of them. Defen-dant, subsequently, caused an act of sale to be drawn up by a notary, declaring that there was *no warranty of the health of the slaves sold, it being understood between the parties that they were constitutionally unsound.*

He tendered this deed to the plaintiffs, who refused to accept it, as being con-trary to their verbal conventions ; the parol proof of which was received, with-out objection on the trial. Defendant, upon this refusal, threw the deed on the floor at plaintiff's feet, and left the house.

It was considered by the majority of the court, that the act of defendant, in tendering a false bill of sale to plaintiffs, and in insisting upon their receiving it, indicated a determination, on his part, not to rescind the sale ; which rendered a formal tender unnecessary, because it would have been fruitless. We also con-sidered, that the feeble and bedridden condition of the slaves, at the time of this conduct of defendant, (they being both sick of pulmonary consumption, of which they shortly afterwards died,) rendered their removal from plaintiff's house im-practicable, without inhumanity. Hence the language of Judge Lea, in the opinion, as quoted above.

Judge Spofford dissented from that decision, as the report of the case shows, because a tender was alleged in the petition, and denied in the answer ; and be-

cause the learned Judge thought that the facts of the case disclosed no impracticability nor inconvenience in the return of the slaves. There is surely nothing in either of the opinions delivered in *Dixon* v. *Chadwick*, that militates against the well established doctrine of tender, as a prerequisite to recovery in the redhibitory action. We entertain no doubt of the correctness of the decision in that case. It was, in fact, a case within the recognized *exceptions* to the general rule.

To use the language of Judge Martin, upon this very subject, in *Barrett* v. *Bullard, exceptio probat regulam.*

It is, therefore, adjudged and decreed, that the judgment of the District Court be reversed; and that there be judgment for defendant, as in case of non-suit, with costs of both courts.

MERRICK, C. J., dissenting. The main question presented in this case, is whether, under the circumstances, an actual tender of the slave, and demand of a rescission of the sale previous to the institution of this action of redhibition, were necessary to the maintenance of the action.

In my opinion, the present case does not come within the general rule.

The proof shows that the defendant is a practicing physician; that he carried the slave in a carriage to the house of the plaintiff, six miles from Amite City, in the parish of St. Helena, at the time he negotiated the trade, and returned with her the same day; that he represented her a strong, healthy, field hand, capable of doing as much work as a negro man belonging to plaintiff, named *George;* that he desired that the bargain should not be spoken of. That within three or four days after the delivery of the slave and completion of the contract, it was discovered that the woman was afflicted with some disease, and a physician was called to treat her complaint; the disease proved to be what the physician calls *procedentia uteri,* and is of a character to render the slave utterly valueless. The sale was made the 25th of March, 1858, and the defendant left the parish and State in May or the first of June following. The suit was commenced by attachment the 18th day of September. It appears that defendant had an agent at Amite City, for some collections; *but there was no publication of the agency, and it is not shown, nor pretended, that the agent had any authority to rescind the sale or receive the negro,* nor that plaintiff had any knowledge of the agency, although it was supposed to have been notorious in Amite City, which, a witness thinks, is the place of plaintiff's post-office.

It is not shown that plaintiff knew the slave was utterly worthless when defendant left the State.

An exception was taken to the petition, that it did not allege the slave to be afflicted with any disease known to the laws of Louisiana.

It was not objected, that a previous tender had not been made.

The petition was amended to cure the defect, and thereupon a general denial was filed as an answer.

The testimony was received without objection, and the case must be disposed of upon the evidence, under the uniform decisions of this court.

If there were any law requiring the vendee to tender the slave, and demand a rescission, as soon as he had fully ascertained that the slave was affected with a redhibitory disease, I should be of the opinion that the defendant was exempt from its operation in this instance; because it does not appear, that he had fully ascertained the character of the disease before the suit was brought, and the law gave him the right to elect whether he would sue for a reduction of the price, or bring a simple action of redhibition. C. C. 2519, 2522.

LEWIS
*v.*
MORGAN.

If the demand for rescission be an amicable demand, as assumed in the opinion of the majority of the court, then no amicable demand was needed in this case, because the defendant was an absentee, and in such cases it is lawful to attach when you can find property. *Millaudon* v. *Beazley*, 2 An. 916.

But I maintain, that the tender and demand of a rescission are something more; they are, in the nature of a putting *in mora*, and although not within the provisions of Article 1905 of the Civil Code, have been adopted by our courts as within its spirit.

Now, the right to put the opposite party in default, or to make an amicable demand, exists as long as the action exists, which they perfect. In the case of *Hall* v. *Lorente* it was held, that a condition might be performed and a party put in default *sixteen* years after the party had acquired the right to demand a performance. See 3 An. 275.

The lawgiver has declared, that the vendee shall have the right to bring his action of redhibition at any time within one year after the sale, and in some cases, within one year after he has discovered the vice. C. C. 2512, 2524. Now, when the lawgiver has conceded the action, he has conceded the right to make all demands and tenders necessary to make the action available. *Qui concedit aliquid, concedit omne sine quo, concessio est irrita.*

The lawgiver has not said that the vendee shall have an action if he makes a tender and demand as soon as he discovers the vice which gives rise to his action; *but has declared that he may bring his action at any time within the year*. The courts cannot distinguish where the lawgiver has not distinguished. Where, then, is the text of law, or the well considered authority, which adds this new condition to this otherwise clear principle of law? I am aware of none. That the lawgiver never intended such a condition, is evident, I think, from the two Articles already cited.

One provides that, where the seller, not being domiciled in the State, absents himself *before the expiration of the year* following the sale, the prescription remains suspended during his absence. Now, the cause of action is declared to exist without any putting *in mora* previous to his departure.

The other Article declares, that if the seller knew the vice, the action of redhibition may be commenced at any time, provided a year has not elapsed since the discovery of the vice. C. C. 2524. Here again, the action continues a year after the vice has been discovered, and the lawgiver has annexed no *proviso* that the vendee shall make a demand and tender the first opportunity, or within a reasonable time. He has the entire year after the discovery, to make the demand and bring his suit.

So of the case before us. The plaintiff had the entire year in which to make the tender, and demand the rescission. The defendant could not deprive him of that right by absenting himself from the State. If the tender and demand became impossible by the act of the defendant, his act cannot be permitted to prejudice the plaintiff's right.

In the case of *Smith* v. *Taylor*, 10 Rob. 133, it was held that the vendee could not be deprived of any part of the year, even by a casualty, and that although he had had eleven months and twenty-nine days in which he might have brought his action, he was entitled to the last day of the twelfth month, and as it was not possible, owing to the absence of the clerk, to file his suit that day, his right should be suspended until the impediment was removed. The court said " The plaintiff had until the last day of the year to commence proceedings, and was not obliged to procure process of citation before."

So in the case of *Dixon* v. *Chadwick*, 11 An., the plaintiff had at first sufficient time to have tendered the slaves to the defendant; but as they died before the expiration of the year, their delivery became impossible before plaintiff's right had become barred by prescription.

The proof of the contract of sale by parol did not vary the rights of the parties in that case. The question which we now have under consideration was discussed, and the opinion of the majority of the court received my unhesitating concurrence on this question alone, and met with Mr. Justice Spofford's dissent. What other considerations may have operated upon the minds of other judges, I do not pretend to know. I know no provision of law requiring a tender *after suit brought*. The *decree* could produce the effect intended by the tender.

I am of the opinion that the defendant, in this case, must have known of the redhibitory defect, and I can see no reason why he should be permitted to defraud the plaintiff out of the price of the slave. The District Judge, who saw and heard the witnesses testify, has found for the plaintiff, and I do not think his judgment ought to be disturbed.